PAMELA TAZZIZ *vs.* ISMAIL TAZZIZ.*

No. 88-P-941.

Barnstable. September 14, 1988. — September 22, 1988.

Present: KASS, CUTTER, & SMITH, JJ.

*Probate Court,* Jurisdiction, Custody of child. *Jurisdiction,* Custody of child. *Uniform Child Custody Jurisdiction Act.*

A child custody matter involving parties of different nationality who had resided in a foreign country for a substantial period was remanded to a Probate Court for further evidentiary inquiry with respect to whether the court has jurisdiction and for a determination whether the court in its discretion should exercise jurisdiction pursuant to G. L. c. 209B, § 7, in the unusual and complex circumstances presented. [813-815]

This court indicated matters about which a Probate Court should inquire in order to ensure an adequate basis for the exercise of any discretion that it may possess, pursuant to G. L. c. 209B, § 7, in a certain custody matter involving parties of different nationality. [815-817]

COMPLAINT seeking custody of minor children, filed in the Barnstable Division of the Probate and Family Court Department on June 9, 1988.

The case was heard by *Sheila E. McGovern,* J.

*Paul V. Kenneally* for the mother.

*Scott P. Curtis* for the father.

CUTTER, J. This is an appeal, from a decision on or as of August 5, 1988, of a probate judge dismissing with prejudice a complaint of the mother of four minor children (describing

---

* This case was originally decided by memorandum and order on September 22, 1988, under Rule 1:28 of the Appeals Court. See *post* 1112 (1988). It later was represented (in behalf of the Chief Justice of the Probate and Family Court) to the panel which had decided this matter, that the decision would be helpful if published as an opinion. It was decided that the suggestion was proper. This opinion in general follows the original rule 1:28 memorandum and order with an appendix added and with minor revisions. — REPORTER.

herself as "of East Falmouth, Barnstable County") for custody of those children. The unusual situation dealt with by the judge [1] is fully stated later in this opinion. The judge stayed the order of dismissal pending review of the situation by this court. For reasons stated below, we order that the judgment of dismissal be vacated and remand the case to the Probate and Family Court for further consideration (on the issues both [a] whether that court has jurisdiction of this case, and [b] whether to exercise jurisdiction) in the light of this opinion.

*Background Facts*

The following facts do not appear now to be in dispute. [2]

(a) The father and mother of the minors were married in Massachusetts in 1966 in accordance with Islamic law. She is a citizen of the United States and also of Jordan. She has lived for twenty-two years since her marriage with the father in East Jerusalem. She holds an Israeli identification card. The father

---

[1] The father of the minors in his brief prior to the arguments in September, 1988, contended that the Probate and Family Court clearly had no jurisdiction at all under G. L. c. 209B in this situation. For reasons more fully discussed in the appendix to this opinion, this panel rejects that view. Chapter 209B, for the most part, applies only to matters of child custody as between "states," narrowly defined in c. 209B, § 1, as confined to States and subdivisions of *this* nation. The question of *jurisdiction* with respect to issues of child custody possibly involving the courts of *another nation* appears to require further inquiry about particular matters of fact also pertinent to the issue whether (in a particular case) to *exercise* jurisdiction. The issue of jurisdiction accordingly was not discussed in detail in the memorandum and order issued under rule 1:28 on September 22, 1988. That memorandum and order was regarded essentially as requesting in this case a further inquiry and findings by the trial judge on stated matters of fact, pertinent both to the *existence* and *exercise* of jurisdiction, necessary for the guidance of the Probate Court and for consideration on review by any appellate court.

[2] It is not clear from the judge's findings about prior proceedings to what extent she conducted evidentiary hearings on this matter. The father at all times appeared pro se in the Probate Court, although at the arguments before us he was represented by counsel. The wife's counsel, at the arguments, stated that certain background facts had been developed by him in discussion with the father personally and then had been presented to the trial judge. In making her findings the judge presumably took into account whatever testimony or statements of the parties, of the minor children, and of the mother's counsel were made before her or were available to her.

is a citizen of Jordan with a Jordanian passport and holds an Israeli identification card.

(b) The following children of the marriage are living: Hanadi, a married adult daughter living in Jordan; Mohammed, an adult son now living and studying in Massachusetts; Hytham, a son sixteen years old; Amanda and Melinda, daughters, respectively fifteen and twelve years old; and Amar, a ten year old son. Both parents and all the minors are physically now within Massachusetts. It was represented at the arguments that all the minors are now attending school in Falmouth and that they are completely bilingual in English and Arabic. They were born and raised in Jerusalem "in an Islamic-Arab community in accordance with Islamic tradition and [have] attended [an] Arab private school." They are citizens of Jordan and have been residents of Israel. Because their mother is a citizen of the United States, they are considered also citizens of the United States born abroad of a mother who is a United States citizen. They have United States passports.

(c) About May 28, 1988, the mother came to Massachusetts with the three younger minor children. She and the minor children now are living at the home of the mother's father in East Falmouth. The mother had taken the three younger children to visit her married daughter in Jordan. There, without either the knowledge or consent of the children's father, she took them by air to Massachusetts. She then initiated these proceedings to obtain custody of the minor children then in Massachusetts and obtained from the probate judge on June 9, 1988, an order for temporary custody of these three children, stating by affidavit that she knew of no other pending custody proceedings anywhere.

(d) The father (at least by late July or early August) came to Massachusetts with the older minor son, Hytham, at some date not stated in the judge's findings and rulings, but apparently after the mother had initiated these proceedings. The custody of Hytham (not awarded in the original temporary order of June 9) was placed, by stipulation of the parties, with

the mother.[3] Before he left Israel the father filed proceedings in the Sharia Court (as to the nature of which there are no sufficient findings) in Israel. In those proceedings in Israel an order of notice has been issued for a hearing in Israel on Wednesday, September 28, 1988.

(e) At various proceedings before the judge, it became apparent that all four minor children wish to remain with the mother, but the judge, regarding this proceeding as a purely jurisdictional matter, made no detailed findings as to these wishes of the four minor children or as to charges (tardily made by the mother) against the father of physical abuse of the daughter Amanda[4] or about the reasons and circumstances which may have led the mother to remove the minor children to Massachusetts.

*Positions of the Parties*

The judge in her findings states the *general* positions of each of the parties. The "[m]other seeks custody from the Massachusetts [c]ourt. Her position is that conditions in East Jerusalem have become such that the children are unable to attend school regularly and that their safety and well being are in jeopardy." The father "asserts that the Jerusalem [c]ourt is the proper locus for the determination of the custody issues between the parties." He "admits that . . . probably the Jerusalem [c]ourt will award custody of the minor children of the parties to the [m]other, that she would be allowed to have separate domicile in Israel with the children, but that the [Israeli c]ourt would not allow her to leave Israel, thus depriving the [f]ather of access to his children."

*Discussion* (see also the appendix to this opinion, *infra*)

No expert testimony or evidence (other than the father's admissions) appears to have been presented to the judge about what principles of family law would be applied in the Sharia

---

[3] The father has been directed to submit his passport to the Probate Court and is restrained from removing the children from Massachusetts until the further order of the court. Temporary visitation rights have been stipulated.

[4] Amanda was stated by the judge to have become "very emotional about going on . . . [a] visit with the [f]ather and could not even express . . . her concerns about going. She was paralyzed to speak out."

Court to Moslems living in Israel, to what extent those principles would be governed by Moslem religious law applied by Moslem or Israeli judges, and to what extent those principles (whatever may be the composition of the Sharia Court personnel) would be substantially consistent with the governing principles of Massachusetts law regarding child custody (in addition to due process requirements concerning such procedural matters as notices, representation by counsel, and opportunity to be heard). One case, *Custody of a Minor (No. 3)*, 392 Mass. 728, 735-736 (1984, hereinafter referred to as "the 1984 custody case") suggests that such consistency with substantive Massachusetts law should be determined after inquiry whether the applicable law includes a basic concern for the best interests of the children, as contrasted, for example, with an undue consideration for purely parental interests.

As already stated, the probate judge (on or as of August 5) dismissed the mother's complaint with prejudice, but stayed the order until a decision of this court. A single justice of this court ruled, on August 18, 1988, that the order of dismissal constituted a final order of the Probate and Family Court subject to review by a panel of this court.

There is no clear indication by the judge in her findings and rulings that she recognized that she had discretion whether to take jurisdiction of the controversy. We think that, before acting (beyond this opinion) upon the appeal before us, there should be (for the guidance of the trial judge and this court) substantial further exploration and findings by the judge with respect to various aspects of the present case.

Affirmance of the order below, as a practical matter, would force the mother, a citizen of the United States, and four minor citizens of the United States (albeit with dual citizenship in Jordan) to return to Israel for trial of this controversy. Such a return, the mother asserts, will expose the minor children to significant physical and educational hazards. The situation is one where there may be a substantial desire on the part of the mother permanently to remove the minor children to New England (and of the children thus to be removed) from a community which at present appears to be beset by serious interna-

tional tensions. Here, at least, such tensions are more remote, and the opportunities for members of minorities, such as these children, may be regarded by the mother and by them as more promising and varied than in the Near East. The findings below do not demonstrate to us that these considerations have been sufficiently taken into account by the judge with recognition that the present complex circumstances may give her some of the usual broad discretionary powers of a probate judge and a duty to exercise discretion, at least under G. L. c. 209B, § 7.[5]

This case obviously involves a situation to which the provisions of G. L. c. 209B have substantial application. The chapter appears to be based in some degree upon the Uniform Child Custody Jurisdiction Act, 9 U.L.A. 111 (Master ed. 1979), but varies from that draft statute in material respects. General Laws c. 209B, § 14, inserted by St. 1983, c. 680, § 1, provides that "[t]o the extent that the legal institutions of other nations *have rendered* custody determinations in substantial conformity with the provisions of this chapter, the courts of the commonwealth shall grant due recognition to such determinations" (emphasis supplied).

This provision was applied in the 1984 custody case, 392 Mass. at 730-731, 737, to enforce in Massachusetts a *preexisting* custody order of an Australian court. In that decision the parties conceded (a) that c. 209B was applicable to the situation then before the court, (b) that the Australian court had jurisdiction of the minor there involved when its custody order was entered, and (c) that "the procedural and substantive custody law of Australia appears reasonably comparable to that of" Massachusetts. *Id.* at 731. As to this, the opinion in the 1984 custody case reads (at 735), after citing *Schiereck* v. *Schiereck*, 14 Mass. App. Ct. 378, 380 (1982), "The procedural and substantive law applied by the foreign court must be reasonably

---

[5] Failure of a judge to recognize that there is a range of discretion for judicial action may constitute a reviewable error of law. *Long* v. *George*, 296 Mass. 574, 578 (1937). *Peterson* v. *Cadogan*, 313 Mass. 133, 134-135 (1943). *Fletcher* v. *Cape Cod Gas Co.*, 394 Mass. 595, 601 (1985). *Commonwealth* v. *Ramos*, 402 Mass. 209, 216 (1988). See also *Commonwealth* v. *Ruiz*, 400 Mass. 214, 215 (1987), and cases there cited.

comparable to the law of the Commonwealth. For the purposes of this case, we assume that that standard survives the enactment of G. L. c. 209B. The wife concedes that the Australian law is reasonably comparable to our law." [6]

Other cases involving international issues of custody under c. 209B include *Bak* v. *Bak*, 24 Mass. App. Ct. 608, 613-616 (1987), which, in different circumstances, recognized the existence of a range of discretion in a probate judge whether to defer to custody proceedings in a foreign country. See the language of c. 209B, § 7. That section, on its face, deals with situations in which a trial judge not only is permitted, but may be required, to exercise discretion.

*Conclusion*

We remand the case to the Probate Court (for further consideration, if possible, by the same probate judge, after such additional evidentiary inquiry as she shall determine to be appropriate) on at least the following matters: (a) the date when proceedings were commenced in Israel and the nature and content of any pleadings there filed; (b) the nature and the composition of the Sharia Court and of the substantive law and principles which would be applied in Israel in that court

---

[6] The 1984 custody case then continued (392 Mass. at 735-736), "We would grant that we might not enforce a foreign custody determination made in an arbitrary or capricious manner, even if the applicable foreign law were comparable. Here, however, we see no indication of arbitrary or capricious action . . . . Finally, as the Appeals Court said, the foreign order *must be based on a determination of the best interests of the child*. This is a corollary to the requirement that the foreign substantive law must be reasonably comparable to ours. Here the Australian judge expressly recognized that standard ('welfare of the child as the paramount consideration' . . .) . . . ." (Emphasis supplied.) The 1984 custody case (at 733) referred to c. 209B, § 2(*d*), as not applicable to the case then before the court, but gave the caution that the 1984 court "read § 2(*d*) as telling Massachusetts judges not to act when custody proceedings are *pending in another State* and the circumstances described in . . . [§ 2(*d*)] exist." We recognize that there is probably doubt about (1) how far this admonition is to be applied, (2) whether it has application where broader problems and considerations exist, and (3) whether the Massachusetts proceeding in the present case preceded in time the foreign (and as yet undecided) Israeli proceeding. Although the 1984 custody case involved a preexisting order of a foreign court, it is relevant to an inquiry whether a Massachusetts court would or should recognize any order which might be entered by the Sharia Court.

to family custody disputes between Moslems having the nationalities of each of the parties to this case and of their minor children; (c) whether and to what extent the law which the Sharia Court should apply is consistent with Massachusetts law in respects already discussed; (d) the wishes, intentions, and purposes of each of the parties and of each of their minor children with respect to their continued residence in Massachusetts and in the United States (see *Murphy* v. *Murphy*, 380 Mass. 454, 458 [1980], with recognition that the case deals with a situation prior to the enactment of c. 209B); (e) the economic circumstances of each of the parties, at least so far as these circumstances may affect the financial ability of the mother and each minor child to remain in the United States, including consideration of the opportunities of the mother for employment and support of herself and family both in Israel and in the United States (including the possibility of assistance from the mother's father); (f) the probable physical safety of each of the minor children and the opportunities for education, if they are ordered to return to Israel now; (g) whether any obstacles will or may exist to continuing in the future the privileges of the minor children to enter and live in the United States as citizens if they and their mother are obliged now to return to Israel and live there until the minor children, respectively, become of full age; and (h) whether the preference of the minors (already indicated to the judge) to live with the mother (rather than the father) because of alleged conduct of the father (or for other reasons) has any bearing on the exercise of the judge's discretion or justifies or explains the method adopted by the mother in bringing three of the minors to Massachusetts.

We intend no suggestion concerning the particular way in which the judge shall determine whether the Probate Court has jurisdiction and whether she should exercise her discretion. We only indicate matters about which inquiry should be made in order to ensure (a) an adequate basis for the exercise of her discretion and (b) appropriate findings of fact and rulings indi-

cating the basis of her decision.[7] See and compare *Redding* v. *Redding*, 398 Mass. 102, 105-106 (1986).

The judgment of dismissal entered by the Probate and Family Court is vacated and the case is remanded to that court for further proceedings in all respects consistent herewith. The rescript is to issue immediately. Costs of this appeal are to be in the discretion of the Probate Court.

*So ordered.*

APPENDIX.

*Discussion of Whether the Probate Court has Jurisdiction.*
(Not included in memorandum and order issued on September 22, 1988)

In the situation discussed in footnote 1 to this opinion, *supra,* it should be noted that c. 209B, by virtue of the definition of "State" in § 1, makes *most* (viz., §§ 2-13) of the provisions of c. 209B, applicable only to "any state, territory, or a possession of the United States, the Commonwealth of Puerto Rico, and the District of Columbia." Chapter 209B, § 14, provides, in very general terms, to "[i]nternational custody determinations" and "recognition" of them; as follows: "To the extent that the legal institutions of other nations have rendered custody determinations *in substantial conformity with the provisions of this chapter,* the courts of the commonwealth shall grant due recognition to such determinations" (emphasis supplied). This provision appears to refer to *all* the provisions of c. 209B, and not merely to § 2 relating specifically to jurisdiction.

Chapter 209B grants jurisdiction to a court (competent to deal with child custody) of this Commonwealth under § 2(*a*)(3)(ii) "where the child is physically present in the commonwealth and . . . (ii) it is necessary in an emergency to protect the child from . . . neglect or *for other good cause shown*" (emphasis supplied), subject to a proviso which appears to apply

---

[7] Obtaining appropriate evidence of the applicable principles of Israeli law in the present circumstances may be assisted by the use of statutory and decisional material available in one or more of the law schools in Massachusetts or elsewhere in New England. Staff members of such a law school may be qualified to give expert testimony on such legal principles. The attention of the probate judge is invited to the provisions of G. L. c. 209, § 7(*c*), use of which may facilitate arrangement of any necessary postponement of the proceeding now proposed in Israel for September 28, 1988. See, also, by way of analogy, Mass.R.A.P. 29(c), 365 Mass. 877 (1974).

only with respect to another "State" as defined in § 1. The phrase "other good cause shown" reasonably could be viewed as including the physical risks to the minors if it were to be ordered that they be returned to East Jerusalem. It may be significant that § 2(*b*) of c. 209B reads: "(*b*) Except under subparagraphs (3) and (4) of paragraph (2) physical presence in the commonwealth . . . of the child *and one of the contestants* is not alone sufficient to confer jurisdiction on a court of the commonwealth to make a custody determination" (emphasis supplied). In the present case, *both* of the contestants (and not merely one of them) actually were present before the Probate Court, although the husband was there to dispute the court's jurisdiction.

Apart from c. 209B, there would be no doubt that the Probate Court would have had jurisdiction of this custody contest solely by virtue of the presence of the minor children within the commonwealth. See *Murphy* v. *Murphy,* 380 Mass. 454, 458 (1980, a pre-c. 209B decision); Restatement (Second) of Conflict of Laws, §§ 79, 92, 98 (1971). See also, generally, discussions in Annual Survey of Massachusetts Law, §§ 1.5 and 9.1 (1984) and authorities cited in each of the foregoing.