LEONARD J. UMINA vs. KATHRYN L. MALBICA.

No. 88-P-34.

Middlesex. January 13, 1989. — May 23, 1989.

Present: ARMSTRONG, PERRETTA, & KASS, JJ.

*Divorce and Separation*, Jurisdiction, Child custody, Foreign determination
as to custody of child. *Jurisdiction*, Custody of child. *Probate Court*,
Jurisdiction, Custody of child. *Uniform Child Custody Jurisdiction Act*.
*Moot Question*. *Practice, Civil*, Moot case. *Words*, "Hearing."

This court considered whether a Probate Court judge in Massachusetts
correctly applied G. L. c. 209B, the Massachusetts Child Custody Juris-
diction Act, in determining that jurisdiction over custody of certain
children lay in the Colorado courts and whether, in any event, the judge
should have conducted an evidentiary hearing before ordering the chil-
dren to be brought before a Colorado judge, even though the questions
had become moot, where resolution of the underlying child custody
issue created a likelihood of mootness prior to completion of the appellate
process in such cases and where the questions presented affected the
public interest beyond the parties. [354]

Discussion of the differing criteria for determining jurisdiction over child
custody matters as set out in the Massachusetts Child Custody Jurisdiction
Act, G. L. c. 209B, and the Uniform Child Custody Jurisdiction Act.
[354-357].

A Probate Court judge in Massachusetts correctly applied G. L. c. 209B,
the Massachusetts Child Custody Jurisdiction Act, in determining that
jurisdiction over custody of certain children lay in the Colorado courts,
where Massachusetts was not the "home state" of the children "on the
commencement of the custody proceeding" (here, the date their father
filed a complaint for modification) as required by G. L. c. 209B, § 2
(*a*) (1), and where, even in light of evidence before the Massachusetts
judge from which he could have found that the children were at risk of
abuse by their mother in Colorado, a temporary order was all that the
judge had authority to grant under § 2 (*a*) (3), unless the Colorado judge
expressly declined jurisdiction in favor of Massachusetts. [357-360]

A Probate Court judge in Massachusetts who correctly applied G. L.
c. 209B, the Massachusetts Child Custody Jurisdiction Act, in determin-
ing that jurisdiction over custody of certain children lay in the Colorado
courts should, in the circumstances, have conducted an evidentiary hear-

ing on the question of mental or physical harm to the children from being required to appear in Colorado in accordance with G. L. c. 209B, § 11, before ordering the children to be brought before a Colorado judge. [360-362]

COMPLAINT for divorce filed in the Middlesex Division of the Probate and Family Court Department on August 17, 1984.

A proceeding for modification commenced on July 28, 1986, was heard by *James M. Sweeney*, J.

*Leonard J. Umina*, pro se.

KASS, J. In the spring of 1986, his children by a first marriage came to sojourn with Leonard J. Umina in Marlboro. Since January, 1985, the children's home had been with their mother in Colorado. For reasons to which we shall return, the father on July 28, 1986, petitioned in Probate Court for modification of a Massachusetts divorce judgment entered May 15, 1985.

A judge of the Probate Court determined that, under G. L. c. 209B, the Massachusetts Child Custody Jurisdiction Act, as inserted by St. 1983, c. 680, § 1, jurisdiction over custody of the children lay in Colorado. The correctness of the judge's application of c. 209B and whether, in any event, he should have conducted an evidentiary hearing before ordering the children to be brought before a Colorado judge are the principal questions on appeal.

During their eight years of marriage, Leonard Umina and Kathryn Malbica had three children, all born in Massachusetts. Divorce proceedings commenced in August, 1984. A separation agreement, later incorporated in a divorce judgment, provided that Kathryn would be the custodial parent. She lawfully removed to Colorado at the end of 1984 or the very beginning of 1985.

Fifteen months later, on March 21, 1986, the mother sent the oldest child, Amy (then almost nine years old) to stay with her father. Amy and her mother had been getting along badly. The following June, Laura (age six) and Suzanne (age three) came to Massachusetts to visit. The three girls settled cheerfully into their father's household. He had remarried.

Accounts of abuse and neglect by their mother, Kathryn, began to emerge. Umina took the children to a psychologist who concluded that the likelihood of serious abuse by the mother was such as to require a report to the Department of Social Services. The department substantiated the allegations of abuse and neglect on July 25, 1986.

On the strength of this professional reinforcement of what his children (one supposes mostly the older two) had reported, Umina sought a modification of the divorce judgment which would give him custody of the three girls. A Probate Court judge granted the father temporary custody, pending further hearings. Further proceedings came before a second Probate Court judge who, after studying memoranda of counsel, decided that, under the Massachusetts Child Custody Jurisdiction Act, questions of custody of the children were within the jurisdiction of Colorado, not Massachusetts.

As authorized in the statute (G. L. c. 209B, § 7[c] and [f]), the Massachusetts judge communicated with his Colorado counterpart to notify her that he was ordering the parties and the children to appear before her and to recommend that custody be awarded to the father. See *Redding* v. *Redding*, 398 Mass. 102, 104-105 & n.3 (1986). To that course the father was extremely resistant. His view was that taking the children to Colorado, even in his care, would be grievously upsetting to them. October 26, 1987, the day which the Probate Court judge had established (apparently with cooperation of the Colorado judge) for the hearing in Colorado, came and went.

On December 1, 1987, the mother filed in Probate Court an ex parte petition for habeas corpus to compel the children's appearance before the Colorado court. There were overtones that Umina had declared his refusal to allow the children to be taken to Colorado and that he might hide them. The Probate Court judge issued the writ with instructions that a probation officer, escorted by a deputy sheriff, take the three girls in custody and bring them before the Colorado court.

Proceedings before the District Court for Jefferson County in Colorado wound up with an award of custody of the children to the father, with whom they now reside in Marlboro, Massachusetts.

1. *Mootness.* The appeal is from the orders of the second Probate Court judge declining jurisdiction and issuing the writ which produced the children in Colorado, issues in which Umina no longer has any personal stake, beyond intellectual and emotional ones. The questions he raises are, therefore, moot. *Blake* v. *Massachusetts Parole Bd.*, 369 Mass. 701, 703 (1976). *Bronstein* v. *Board of Registration in Optometry*, 403 Mass. 621, 627 (1988). Yet the underlying questions of how these difficult and emotionally charged cases should proceed fall under the rubric "capable of repetition, yet evading review," *Southern Pac. Terminal Co.* v. *Interstate Commerce Commn.*, 219 U.S. 498, 515 (1911), as the underlying child custody issue will, as here, have been resolved before the appeal is resolved. See *Adoption of Emily*, 25 Mass. App. Ct. 579, 580 n.1 (1988). The questions presented affect the public interest beyond the parties. *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943). *Brach* v. *Chief Justice of the Dist. Court Dept.*, 386 Mass. 528, 532-533 (1982). *County of Suffolk* v. *Labor Relations Commn.*, 15 Mass. App. Ct. 127, 131 (1983). Constitutional issues are not involved, compare *Lockhart* v. *Attorney Gen.*, 390 Mass. 780, 782-784 (1984), and explication of the statute may be of some use.[1] See, e.g., *Superintendent of Worcester State Hosp.* v. *Hagberg*, 374 Mass. 271, 274 (1978); *Hashimi* v. *Kalil*, 388 Mass. 607, 608-609 (1983).

2. *Jurisdiction over custody arrangements.* When construing G. L. c. 209B, the Massachusetts Child Custody Jurisdiction Act (hereafter referred to as the "MCCJA" and sometimes "the Massachusetts act"), it bears keeping in mind that the MCCJA is far from a carbon copy of the Uniform Child Custody Jurisdiction Act (hereafter referred to as the "UCCJA" and sometimes the "uniform act").[2] 9(Pt. 1) U.L.A. 123 (Master ed.

---

[1] To date only four cases implicating G. L. c. 209B have made the books: *Custody of a Minor (No. 3)*, 392 Mass. 728 (1984); *Redding* v. *Redding*, 398 Mass. 102 (1986); *Bak* v. *Bak*, 24 Mass. App. Ct. 608 (1987); *Tazziz* v. *Tazziz*, 26 Mass. App. Ct. 809 (1988).

[2] Massachusetts apparently subscribed with reluctance to a UCCJA-type act. In 1982, it was one of two states in the continental United States

1988). See *Custody of a Minor (No. 3)*, 392 Mass. 728, 731 n.3 (1984) ("similar but not identical"); *Tazziz* v. *Tazziz*, 26 Mass. App. Ct. 809, 814 (1988) ("The chapter [209B] appears to be based in some degree upon the [UCCJA] but varies from that draft statute in material respects"). At least one commentator has written that Massachusetts "may not, strictly speaking, be considered a UCCJA state." Blakesley, Child Custody — Jurisdiction and Procedure, 35 Emory L.J. 291, 296 n.26 & 358 n.371 (1986). Cases from other States based on the UCCJA may, therefore, often be of marginal utility.

Under the Massachusetts act, determination of jurisdiction requires a two-step analysis: first, whether § 2 of the MCCJA confers jurisdiction upon the Massachusetts court at all; and, second, whether, after weighing the criteria in § 7 of the MCCJA (the inconvenient forum provision), the court *should* exercise jurisdiction. In that respect the MCCJA resembles the method prescribed by §§ 3 and 7 of the UCCJA.[3]

If there is a basis for jurisdiction, § 7 of both the UCCJA and the MCCJA sets out a series of criteria to be considered when the court makes its discretionary decision whether to accept jurisdiction. *Tazziz* v. *Tazziz*, 26 Mass. App. Ct. at 814. *McCarron* v. *District Court*, 671 P.2d 953, 956 (Colo. 1983). *Brown* v. *Brown*, 195 Conn. 98, 109-110 (1985). *Larsen* v. *Larsen*, 5 Kan. App. 2d 284, 292 (1980). *Breneman* v. *Breneman*, 92 Mich. App. 336, 342 (1979). *Wenz* v. *Schwartze*, 183 Mont. 166, 180 (1979), cert. denied, 444 U.S. 1071 (1980). *Dennis* v. *Dennis*, 387 N.W.2d 234, 236 (N.D. 1986). *Oehler* v. *Clinton*, 282 S.C. 25, 28 (1984). Failure to

---

(Mississippi was the other) which had not adopted such a statute. See Coombs, Interstate Child Custody: Jurisdiction, Recognition, & Enforcement, 66 Minn. L. Rev. 711, 720 & n.60 (1982).

[3] See *In re Marriage of Hopson*, 110 Cal. App. 3d 884, 899-900 (1980); *McCarron* v. *District Court*, 671 P.2d 953, 955 (Colo. 1983); *Brown* v. *Brown*, 195 Conn. 98, 107 (1985); *Grynkewich* v. *McGinley*, 3 Conn. App. 541, 543-544 (1985); *Campbell* v. *Campbell*, 180 Ind. App. 351, 353 (1979); *Larsen* v. *Larsen*, 5 Kan. App. 2d 284, 292 (1980); *Lustig* v. *Lustig*, 99 Mich. App. 716, 724-726 (1980); *Wenz* v. *Schwartze*, 183 Mont. 166, 178-180 (1979), cert. denied, 444 U.S. 1071 (1980); *Dennis* v. *Dennis*, 387 N.W.2d 234, 236 (N.D. 1986); *Holt* v. *District Court*, 626 P.2d 1336, 1341 (Okla. 1981); *Smith* v. *Smith*, 40 Or. App. 257, 259 (1979).

recognize such discretion constitutes an error of law. *Tazziz* v. *Tazziz*, 26 Mass. App. Ct. at 814 & n.5. Cf. *In re Marriage of Hopson*, 110 Cal. App. 3d 884, 901 (1980). The court should, and in some instances must, explain its exercise of discretion in written findings. *Tazziz* v. *Tazziz*, 26 Mass. App. Ct. at 813. See also *Szmyd* v. *Szmyd*, 641 P.2d 14, 19 (Alaska 1982).

In drawing the circle of jurisdiction, the MCCJA is more confined than the UCCJA.[4] Under § 3(a) of the UCCJA, a court is competent to decide a child custody determination if: "it is in the best interest of the child . . . because (i) the child and his parents, or the child and at least one contestant, have a significant connection with [the State in which jurisdiction is sought]." 9(Pt. 1) U.L.A. 143. The MCCJA does not authorize application of a "best interest of the child" test unless "it appears that no other state would have jurisdiction under paragraph (1) [of the MCCJA]." G. L. c. 209B, § 2(*a*)(2).[5] In providing that an emergency may be the basis for jurisdiction, the MCCJA is again more limited than the uniform act. Section 3(a)(3) of the UCCJA provides that a court has jurisdiction if a child "is physically present in this State and . . . (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected [or dependent]." 9(Pt. 1) U.L.A. 144. Similar language appears in the MCCJA, but it is qualified by a proviso that, if jurisdiction might lie in another State, the Massachusetts court may invoke "emergency" jurisdiction only to the extent of "entering such temporary order or orders as it deems necessary unless the court of the other state has declined to exercise jurisdiction, has stayed its proceedings or has otherwise deferred to the jurisdiction of a court of the common-

---

[4] For purposes of comparison and convenient reference, we have set forth the jurisdiction provisions from the UCCJA and from the Federal Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A (1982), as Appendices A and B to this opinion.

[5] The same condition on the "best interest of the child" test appears in the PKPA (see note 4, *supra*). The influence of the PKPA on the Massachusetts act was noted in *Redding* v. *Redding*, 398 Mass. at 106-107 n.4.

wealth." G. L. c. 209B, § 2(*a*)(3). The reader will observe that the Massachusetts act is more deferential than the uniform act to the "home state," of which we shall speak presently.

a. *"Home state" jurisdiction.* The first basis for jurisdiction under § 2 of the MCCJA is as the "home state" of the children "on the commencement of the custody proceeding." G. L. c. 209B, § 2(*a*)(1). Section 1 of the MCCJA defines the "home state" as:

> "[T]he state in which the child immediately preceding the date of commencement of the custody proceeding resided with his parents, a parent, or a person acting as a parent, for at least 6 consecutive months, and in the case of a child less than 6 months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the 6-month or other period;"

G. L. c. 209B, § 1.

Here, the parties' three children had resided with their mother in Colorado for fifteen consecutive months. They had been with their father before the complaint for modification was filed in Massachusetts for approximately three months (in the case of the oldest daughter) and one month (in the case of the younger daughters). Massachusetts, therefore, was not the "home state" on the date of the filing of the complaint for modification. An alternate basis for "home state" jurisdiction presupposes the absence of the children from the Commonwealth and is not here pertinent. See § 2(*a*)(1)(ii) of the MCCJA.

Massachusetts in this case lacked "home state" jurisdiction unless one were to view the proceeding as having commenced with the original divorce action, of which the complaint for modification was but a continuation. Neither the statutory language, reason, nor cases decided under the UCCJA[6] support the single continuous proceeding approach. The statute speaks of "jurisdiction to make a custody determination by initial *or*

---

[6] In this instance the pertinent provisions of the MCCJA and the UCCJA are substantially identical. See G. L. c. 209B, § 2(*a*), and § 3(*a*) of the UCCJA.

modification judgment" (emphasis supplied). Use of the disjunctive signals a legislative intention to treat modification proceedings as distinct from initial ones. Reason favors treating modification proceedings as separate and fresh ones because, if it were otherwise, jurisdiction would lodge perpetually with the State where the initial custody order had been made, potentially long after that State had any relevant contact with the child. Jurisdictions with occasion to consider the question have regarded "the date of the commencement of the proceeding" in modification cases as the time when the request for modification was filed. *Barden* v. *Blau*, 712 P.2d 481, 484-485 (Colo. 1986). *In re Custody of Dunn*, 701 P.2d 158, 160-161 (Colo. Ct. App. 1985). See also *Kioukis* v. *Kioukis*, 185 Conn. 249, 257 (1981); *State ex rel. Cooper* v. *Hamilton*, 688 S.W.2d 821, 823-824 (Tenn. 1985); *In re Thorenson*, 46 Wash. App. 493, 500 n.6 (1987). Cf. *Bak* v. *Bak*, 24 Mass. App. Ct. 608, 614-615 n.7 (1987).

Indeed, it is not unusual for a court which exercised original jurisdiction to lose "home state" jurisdiction. See, e.g., *Barden* v. *Blau*, 712 P.2d at 484-486; *In re Custody of Dunn*, 701 P.2d at 160-161; *Kioukis* v. *Kioukis*, 185 Conn. at 256-257; *Wagner* v. *Wagner*, 482 So.2d 780, 781-782 (La. Ct. App. 1986); *Snow* v. *Snow*, 369 N.W.2d 581, 583 (Minn. Ct. App. 1985); *Boyd* v. *Boyd*, 653 S.W.2d 732, 735-736 (Tenn. Ct. App. 1983). Massachusetts, unlike States more faithful to the UCCJA, does not explicitly reserve jurisdiction under a continuing jurisdiction or a "best interest" provision. Compare *Enslein* v. *Enslein*, 112 A.D.2d 973 (N.Y. 1985); *Jefferson* v. *Downs*, 107 Misc.2d 852 (N.Y. Sup. Ct. 1981); *State ex rel. Cooper* v. *Hamilton*, 688 S.W.2d 821 (Tenn. 1985). Cf. G. L. c. 223A, § 3(*h*), inserted by St. 1987, c. 100, which appears to be directed to child support orders and their modification.

b. *Emergency jurisdiction.* Unable to found jurisdiction on a "home state" basis, a default basis,[7] or necessity basis,[8]

---

[7] General Laws c. 209B, § 2(*a*) (2): "it appears that no other state would have jurisdiction under paragraph (1) [home state basis] and it is in the best interest of the child that a court of the commonwealth assume jurisdiction . . . ."

[8] General Laws c. 209B, § 2(*a*)(4): "it appears that no other state would

the judge was remitted to considering the "emergency" jurisdiction provided for in § 2(*a*)(3) of the MCCJA.[9] There was evidence before the Massachusetts judge from which he could have found that the children were at risk of abuse with their mother in Colorado. Demonstrably, the judge was impressed by that evidence because he communicated his concern to the Colorado judge, recommended to her that the father be given custody, and entered a temporary order granting custody of the girls to the father. As we have previously remarked, under the Massachusetts act, a temporary order was all that the judge had authority to make, unless the Colorado judge expressly declined jurisdiction in favor of Massachusetts. Whether declination of jurisdiction was ever broached to or by the Colorado judge does not appear from the record.[10]

---

have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that the commonwealth is the more appropriate forum to determine the custody of the child . . . ."

[9] General Laws c. 209, § 2(*a*)(3): "the child is physically present in the commonwealth and . . . it is necessary in an emergency to protect the child from abuse or neglect or for other good cause shown . . . unless the court of the other state has declined to exercise jurisdiction, has stayed its proceedings or has otherwise deferred to the jurisdiction of a court of the commonwealth."

[10] The purpose of the sort of brakes imposed on use of the emergency basis in the MCCJA and the utility, if the facts indicate, of suggesting declination of jurisdiction to the foreign court judge were the subject of comment by Professor Coombs:

"There is a risk that litigants, and even some courts, would abuse a statutory provision exempting emergencies from the federal duties. 'The "emergency" may be real or contrived; the facts may be bitterly disputed; the decision may be based upon affidavits or papers of a most self-serving kind; the emergency exception is a "natural" for lawyers to claim and for judges to find for other reasons.' Nevertheless, there will be instances of real emergency in which the court must take prompt, temporary action to remove an endangered child from the custody of one to whom a court had initially given custody or to place an abandoned child in another's custody. . . .

"The judge or another officer of the state where the child is present should telephone the judge of the prior state to seek a temporary order

The Probate Court judge was right in concluding that he was without jurisdiction under § 2 of the MCCJA to hear the custody matter generally.[11] He properly limited the proceedings to measures designed to effectuate Colorado's exercise of jurisdiction, yet to keep the children in their father's care until the Colorado court might order otherwise. Unlike *Tazziz* v. *Tazziz*, 26 Mass. App. Ct. at 809, the judge had no discretion to exercise under § 7 of the MCCJA.

3. *Hearing incident to removal of children to Colorado.* By St. 1987, c. 52, there was added to G. L. c. 209B, § 11, the following paragraph:

> "[N]o child shall be ordered or compelled to appear or attend such proceeding in another state when, after a hearing a judge makes a finding that there is probable cause to believe that such child may be placed in jeopardy or exposed to risk of mental or physical harm by such return to said other state."

---

for change of custody, or perhaps a temporary declination to exercise jurisdiction. This approach would permit protection of the child while further proceedings occur in the prior state or, if the prior state's judge agrees, in the state where the emergency arose."

Coombs, Interstate Child Custody: Jurisdiction, Recognition, and Enforcement, 66 Minn. L. Rev. 711, 863 (1982) (footnotes omitted). Even in some UCCJA States, courts have read a limited scope into their emergency jurisdiction provision. *Nelson* v. *Nelson*, 433 So.2d 1015, 1019 (Fla. Dist. Ct. App. 1983). *Nussbaumer* v. *Nussbaumer*, 442 So.2d 1094, 1097 (Fla. Dist. Ct. App. 1983). *Hache* v. *Riley*, 186 N.J. Super. 119, 128-129 (1982). *Holt* v. *District Court*, 626 P.2d 1336, 1346 (Okla. 1981). See also *Brock* v. *District Court*, 620 P.2d 11, 14 (Colo. 1980).

[11] In response to the father's argument that the mother did not timely raise the issue of subject matter jurisdiction, it is enough to say that subject matter jurisdiction may be raised at any time and upon the initiative of the judge. Mass.R.Dom.Rel.P. 12(h)(3) (1975). *Litton Bus. Syss., Inc.* v. *Commissioner of Rev.*, 383 Mass. 619, 622 (1981). *Flynn* v. *Contributory Retirement Appeal Bd.*, 17 Mass. App. Ct. 668, 670 (1984). The court heard argument of counsel and received affidavits and memoranda on the jurisdiction point. Contrary to the father's suggestion, that was sufficient hearing on the jurisdiction point.

Counsel for the father pressed — with ready witnesses and an attempted offer of proof — for an evidentiary hearing on whether the children were likely to suffer one or more of the harms enumerated in G. L. c. 209B, § 11(*b*), second par. The judge refused to hear witnesses and proceeded solely on the basis of affidavits. We do not think that in this context a paper hearing only is enough.

What the elements of a hearing are, we have had occasion to observe, will vary with the nature of the proceeding. *Milton Commons Associates* v. *Board of Appeals of Milton*, 14 Mass. App. Ct. 111, 114 (1982). See Friendly, Some Kind of Hearing, 123 U. Pa. L. Rev. 1267, 1270 (1975). At the least, a proceeding where no one is allowed to argue or present evidence cannot constitute a "hearing." *Milton Commons Associates* v. *Board of Appeals of Milton, supra* at 114-115.

Whether the children would suffer significant mental or physical harm from a trip to Colorado presented discrete issues of fact, sharply disputed, and subject to witness credibility. On what basis, for example, had a family therapist formed the opinion that requiring the children to go to Colorado would be disastrous? Without testimony and findings by the trial judge and left only with uncontroverted affidavits, even if read with a skeptical eye, a reviewing court is left with the impression of children overwhelmed by fear of their mother and, by extension, of Colorado, where they suffered abuse. If the judge, from testimony at other points in the proceeding, had been led to find that the picture painted in the affidavits was overdrawn, such a finding would be entitled to deference. The norm, we think, should be that, if a parent in a custody proceeding asserts that a child will be exposed to risk of mental or physical harm if required to go to another State, and the assertion is supported by affidavits, the judge, on proper and timely request, should conduct a hearing and make findings (written or dictated into the record) in accordance with G. L. c. 209B, § 11(*b*), second par. Compare *Carabetta Enterprises, Inc.* v. *Schena*, 25 Mass. App. Ct. 389, 391 (1988), in which we remarked that in Massachusetts, contrary to Federal practice, the taking of live testimony is not the norm on applications for injunctive relief.

In this case the parties exacerbated the judge's task, difficult in the best of circumstances, by clinging to extreme positions and, in the case of the father, threatening contumacious conduct. The purpose of the MCCJA and the UCCJA is to discourage dragging children into the courts of whatever State they may happen to be in at a particular moment and to discourage competition among the States. Certainly an objective of the acts is to discourage child snatching by competing parents. Unfortunately, the children here suffered something as frightful — being spirited off by public officials. That was provoked by a parent, who, apparently, was overborne by sincere and strong feelings, who may not have been well advised by counsel, and who refused to recognize the jurisdictional limitations upon the Probate Court judge and that the judge was making an effort to use his limited powers to protect the children. The judge should, as we have said, have held an evidentiary hearing on the question of mental or physical harm to the children from being required to appear in Colorado.

We have observed that the issues on appeal are moot. The appeal, therefore, is dismissed.

*So ordered.*

APPENDIX A.

Excerpt from § 3 of the UCCJA

(a) A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as a parent continues to live in this State; or

(2) it is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child

and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(3) the child is physically present in this State and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected [or dependent]; or

(4) (i) it appears that no other State would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another State has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.


APPENDIX B.

Excerpt from the Parental Kidnapping Prevention Act
[28 U.S.C. § 1738A (c) (1982)]


(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if —

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

(B) (i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;

(D) (i) it appears no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provision of this section continues as long as the requirement of subsection (c) (1) of this section continues to be met and such State remains the residence of the child or of any contestant.

.   .   .

(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if —

(1) it had jurisdiction to make such a child custody determination; and
(2) the court of the other State no longer has jurisdiction, or has declined to exercise such jurisdiction to modify such determination.