## ROBIN M. ORCHARD vs. TRISTAN T. ORCHARD.

No. 95-P-2192.

Norfolk. June 13, 1997. - November 12, 1997.

Present: BROWN, GREENBERG, & FLANNERY, JJ.

*Massachusetts Child Custody Jurisdiction Act. Uniform Child Custody Jurisdiction Act. Probate Court,* Jurisdiction, Custody of child. *Jurisdiction,* Custody of child. *Divorce and Separation,* Jurisdiction, Child custody, Foreign determination as to custody of child.

This court undertook to review an order of the Probate Court in a custody matter, where refusal to review the decision would result in prolongation of the dispute without final resolution. [779]

In the circumstances of a child custody proceeding, in which the father obtained a divorce judgment in Michigan after the mother and two children moved to Massachusetts, the Michigan court correctly asserted its "home state" jurisdiction for purposes of determining custody, and the Michigan court requested assistance from the Probate Court, pursuant to the Uniform Child Custody Jurisdiction Act § 19(b), 9 U.L.A. 319, to compel the appearance of the mother and two children for a permanent custody hearing in Michigan, a judge of the Probate Court abused his discretion in exercising emergency jurisdiction under the Massachusetts Child Custody Jurisdiction Act, G. L. c. 209B, § 2(*a*)(3)(ii), to give temporary custody to the mother and to deny the father's motion to comply with the Michigan court's request for assistance, after considering information provided only by the mother. [779-781]

CIVIL ACTION commenced in the Norfolk Division of the Probate and Family Court Department on March 4, 1992.

The case was heard by *David H. Kopelman,* J.

*Richard D. Packenham* for Robin M. Orchard.

*Joseph L. Mitchell, Jr.,* for Tristan T. Orchard.

GREENBERG, J. This appeal requires us to resolve an interstate custody dispute between the mother, Robin Orchard, and the father, Tristan Orchard. At the time of oral argument, a difference had arisen between a judge seeking to make custody orders in the father's home State of Michigan, and a judge of the Massachusetts Probate and Family Court.

We take the facts from the findings of the Probate Court judge, supplemented by materials in the record. The parties met in October of 1985, and in April of 1987, a daughter, Amber, was born in Quincy.[1] On June 11, 1988, the parties were married in South Weymouth. The family moved to Michigan in February of 1989, where the parties' second child, Tristan, was born, in November of 1990. The parties experienced marital problems, and the mother moved back to Massachusetts with all of the children on February 14, 1992.

As often happens, the breakup spawned two separate proceedings. On February 18, 1992, the father filed a complaint for divorce and custody of Amber and Tristan with the Circuit Court for the County of Iron in Michigan. Shortly afterwards, on March 4, 1992, the mother filed a pro se complaint in the Norfolk County Probate Court seeking custody of Amber and Tristan. In the complaint she disclosed the existence of the pending proceeding in Michigan. The mother then filed an answer in the Michigan proceeding asking the Circuit Court to decline jurisdiction over the custody issue and order the father to pay child support. On or about March 13, 1992, the Michigan court granted the father physical custody of the two children and ordered the mother to return to Michigan for a permanent custody hearing.

Meanwhile, accounts of physical abuse of the children of the mother's first relationship at the hands of the father emerged in affidavits filed by the mother in the Massachusetts case. A family service investigation undertaken by Massachusetts court authorities, based largely on the mother's claims, found that the father had an alcohol problem and had, on occasion, assaulted her older children — his stepchildren. On the strength of what had been reported by the mother, on June 4, 1992, a Probate Court judge found that an emergency existed and granted her temporary custody of Amber and Tristan. See Massachusetts Child Custody Jurisdiction Act, G. L. c. 209B, § 2(a)(3)(ii) (MCCJA).[2]

The father obtained a Michigan divorce judgment on October

---

[1]The mother had three minor children from a previous relationship.

[2]General Laws c. 209B, § 2(a)(3), states that a court competent to decide custody matters may make a determination if:

"the child is physically present in the commonwealth and (I) the child has been abandoned or (ii) it is necessary in an emergency to protect the child from abuse or neglect or for other good cause shown, provided

28, 1992. Because the Michigan judge appropriately left the child-related issues undetermined,[3] the custody standoff continued. In an order dated December 15, 1992, the Michigan court asserted its "home state" jurisdiction.[4] Among other things, the judge gave the mother thirty days to petition to submit evidence on the issues of custody and visitation. Both the mother and the children were ordered to appear in Michigan for an investigation by family court authorities.[5] The mother did not comply. Rather, on January 14, 1993, she filed a "Request for Additional Opportunity to Add Evidence" with the Michigan court. Recounting, through affidavits, various instances of abuse by the husband aimed at both her and the children, the mother asked that the Michigan court not compel her to return to Michigan until completion of the investigation.

The following day, on January 15, 1993, the mother returned to the Probate Court to seek affirmation of the temporary order. Again, the Probate Court judge concluded that it would not be in the best interests of the children or the mother to return to Michigan. He found that, based on the father's alleged history of abuse, an emergency situation continued to exist, and kept the order in effect.

---

that in the event that jurisdictional prerequisites are not established pursuant to any other paragraph of this subsection and a court of another state shall be entitled to assert jurisdiction under any other subparagraph of this paragraph then a court exercising jurisdiction pursuant to this clause of paragraph (3) may do so only by entering such temporary order or orders as it deems necessary unless the court of the other state has declined to exercise jurisdiction, has stayed its proceedings or has otherwise deferred to the jurisdiction of a court of the commonwealth."

[3]These issues included custody, visitation and child support.

[4]"Home state" is defined by G. L. c. 209B, § 1:

"[T]he state in which the child immediately preceding the date of commencement of the custody proceeding resided with his parents, a parent, or a person acting as a parent, for at least 6 consecutive months, and in the case of a child less than 6 months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the 6-month or other period."

There is no assertion by either party in this case that Michigan is not the "home state."

[5]In the order, the Michigan court also asserted and retained jurisdiction over the custody and visitation matters.

On May 21, 1993, the Michigan court requested assistance pursuant to the Uniform Child Custody Jurisdiction Act § 19(b), 9 U.L.A. 319 (Master ed. 1988) (UCCJA),[6] from the Massachusetts court to compel the appearance of the mother and the two children at an August 19, 1993, permanent custody hearing in Michigan.[7] To ease the mother's burden, the Michigan judge indicated his willingness to grant the mother temporary custody of the children pending the hearing in Michigan, to order the father to pay all necessary costs of transportation, and to issue mutual protective orders carrying criminal sanctions. He also requested Legal Services of Northern Michigan to represent the mother at the hearing. The mother responded by filing a motion, which, in essence, asked the Probate Court to delay assistance to the Michigan Court, citing the mother's health problems. That motion was allowed on July 16, 1993.

On April 29, 1994, after reviewing a second set of the mother's affidavits, the Probate Court judge denied the father's motion to comply with the Michigan court's request for assistance under the UCCJA, without prejudice. A trip to the single justice of this court yielded the father no relief. Then, on August 24, 1994, the father renewed the same motion.

Matters continued in limbo until May 1, 1995, when the Probate Court judge, based on the information previously provided by the mother, rendered the decision which is the subject of this appeal. He again denied the father's motion on the ground that the mother's fear for the safety of herself and her children if they were required to return to Michigan constituted an emergency, G. L. c. 209B, § 2(*a*)(3), justifying the refusal to assist the Michigan court, and awarded sole legal and physical custody of the two children to the mother.

In addition, as authorized by statute, G. L. c. 209B, § 7(*c*),

---

[6]The UCCJA and the MCCJA are "similar but not identical." *Custody of a Minor (No. 3)*, 392 Mass. 728, 731 n.3 (1984). The differences, however, are not material to the issues in this case.

Michigan has also adopted the UCCJA. See Mich. Comp. Laws Ann. §§ 600.651 et seq. (West 1996).

[7]Section 19(b) of the UCCJA states that "[a] court of this State may request the appropriate court of another state to order a party to custody proceedings pending in the court of this State to appear in the proceedings, and if that party has physical custody of the child, to appear with the child. The request may state that travel and other necessary expenses of the party and of the child whose appearance is desired will be assessed against another party or will otherwise be paid."

the Probate Court judge sent a letter, written contemporaneously with his decision, to the Michigan court.[8] In that letter, the Probate Court judge summarized the findings he made in his decision on the father's motion to comply with the request for assistance, and asked whether the Michigan court would "be willing to defer the issues of custody, visitation and child support so that these matters may be adjudicated in" a Massachusetts court.[9]

1. *Appropriateness of review.* The mother argues that the order before this court is interlocutory, and thus not reviewable at this time. We view the circumstances of this case as analogous to those cases which invoke the doctrine of present execution. See, e.g., *Borman* v. *Borman*, 378 Mass. 775, 779-780 (1979); *Maddocks* v. *Ricker*, 403 Mass. 592, 597-598 (1988); *In the Matter of Moe*, 31 Mass. App. Ct. 473, 474 n.2 (1991); *Graizzaro* v. *Graizzaro*, 36 Mass. App. Ct. 911, 911-912 (1994). Refusal to review the Probate Court judge's decision would result in further prolongation of the case without final resolution. Because Michigan is the "home state" and is refusing to relinquish jurisdiction to Massachusetts, the ultimate issue of custody can only be determined if the Michigan court is able to conduct a hearing. Where, as here, the Massachusetts court has been delaying the process for a prolonged period of time, without any foreseeable end, we think there is sound ground to review the Probate Court judge's determination.

2. *The merits of the appeal.* The Probate Court judge's decision to exercise jurisdiction under the MCCJA is a discretionary one. *Tazziz* v. *Tazziz*, 26 Mass. App. Ct. 809, 815 (1988); *Umina*

[8] According to G. L. c. 209B, § 7(*c*), "[i]n order to determine whether it is the appropriate forum, a court of the commonwealth may, in its discretion, at any time during the pendency of the custody proceeding, communicate and exchange information with a court or courts of any other relevant jurisdiction." See also *Delk* v. *Gonzalez*, 421 Mass. 525, 529 (1995). The UCCJA contains a similar, but not identical, provision encouraging communication between judges in the two States: "Before determining whether to decline or retain jurisdiction the court [which has jurisdiction under the UCCJA] may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties." UCCJA § 7(d), 9 U.L.A. 233 (Master ed. 1988).

[9] We have been informed by the parties that in response to the Probate Court judge's letter, the Michigan court continues to assert jurisdiction over the children in this case.

v. *Malbica,* 27 Mass. App. Ct. 351, 355-360 (1989). In *Umina,*
we extensively discussed the limits that bear on the assertion of
jurisdiction pursuant to G. L. c. 209B, § 2. This determination
requires a two-step analysis: "first, whether § 2 of the MCCJA
confers jurisdiction upon the Massachusetts court at all; and,
second, whether, after weighing the criteria in § 7 of the MC-
CJA (the inconvenient forum provision), the court *should*
exercise jurisdiction" (emphasis in original).[10] *Id.* at 355.
Ordinarily, an appellate court will not reverse an exercise of the
trial court's discretion absent an abuse of that discretion. *Fried-*
*man* v. *Globe Newspaper Co.,* 38 Mass. App. Ct. 923, 925
(1995).

Even though Massachusetts in this case lacked "home state"
jurisdiction, the Probate Court judge had power pursuant to the
"emergency" provision of G. L. c. 209B, § 2(*a*)(3)(ii). Under
the second prong of *Umina,* however, we think the Probate
Court judge's decision to exercise the emergency power an
abuse of discretion. Throughout these proceedings, the Michigan
court has asserted "home state" jurisdiction. Under the MC-
CJA, a temporary order was all the Probate Court judge had
authority to enter, unless the Michigan judge expressly declined
jurisdiction in favor of Massachusetts. The order entered in this
case is especially troubling because, in these circumstances, it
could last ad infinitum. Thus, the Michigan court remains un-
able to give thoughtful and serious consideration to either the
mother's allegations of abuse, or the father's request for custody
of the children. The Probate Court judge based his denial of the

---

[10]General Laws c. 209B, § 7, sets forth the following five factors that a
court must consider when determining if it is an inconvenient forum:

"(1) whether another state is or recently was the child's home state;

"(2) whether another state has a closer connection with the child and
his family or with the child and one or more of the contestants;

"(3) whether substantial evidence concerning the child's present or
future care, protection, training, and personal relationships is more
readily available in another state;

"(4) whether the parties have agreed on another forum which is not
less appropriate; and

"(5) whether the exercise of jurisdiction by a court of the com-
monwealth would contravene any of the purposes of this chapter."

instant motion on affidavits of the mother, and an investigative report by the Family Service Office which does not contain any statements from the father. It does not appear from the record that the father was invited by the Probate Court judge to submit affidavits concerning his position on custody or visitation.[11] Reaching out to assuage the concerns of the mother, the Michigan court has offered to pay all costs of transportation, to provide for the safety of the parties through mutual restraining orders, and to arrange for Legal Services of Northern Michigan to provide her representation. Additionally, Michigan is willing to recognize the continued temporary custody of the mother during the course of the proceedings. In light of the purposes of the MCCJA, which G. L. c. 209B, § 7(*d*)(5), directs the judge to consider, as well as the accommodations offered by Michigan, we find the Probate Court judge to have abused his discretion in exercising jurisdiction over the children in this case.

For these reasons, the order denying the father's motion is vacated. The case is remanded with instructions to the Probate Court to order the mother to appear with the two children in the Michigan court for a hearing on the issues of custody, visitation and child support.[12]

*So ordered.*

---

[11]We are not suggesting that a judge should decline jurisdiction solely because a stalemate would result. Rather, the one-sidedness of the sources of information provided to the judge in this case evokes the concerns recognized in the following quotation:

> "There is a risk that litigants, and even some courts, would abuse a statutory provision exempting emergencies from the federal duties. 'The "emergency" may be real or contrived; the facts may be bitterly disputed; the decision may be based upon affidavits or papers of a most self-serving kind; the emergency exception is a "natural" for lawyers to claim and for judges to find for other reasons.' "

Coombs, Interstate Child Custody: Jurisdiction, Recognition, and Enforcement, 66 Minn. L. Rev. 711, 863 (1982) (footnote omitted). We recognize that there may be situations of true emergency warranting prompt action by the court. To determine whether such an emergency exists, a judge must, at minimum; hear argument of both counsel, and review affidavits from both parties. See *Umina* v. *Malbica*, 27 Mass. App. Ct. at 360 n.11.

[12]In reaching this result we recognize that we are depriving the Probate Court judge of the opportunity to conduct a full hearing on the existence of an emergency. We do so, however, in light of the significant delay already experienced by the parties and the assurances of safety by the Michigan court.