### CUSTODY OF BRANDON.

Norfolk. November 6, 1989. - March 15, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Divorce and Separation*, Child custody, Foreign determination as to custody of child. *Jurisdiction*, Custody of child. *Probate Court*, Jurisdiction, Custody of child. *Uniform Child Custody Jurisdiction Act. Parental Kidnapping Prevention Act. Constitutional Law*, Full faith and credit.

A Probate Court judge acting pursuant to G. L. c. 209B, § 2 (*a*) (1), correctly determined that his court had jurisdiction over a mother's petition to modify a prior child custody determination by an out-of-State court, where the child and his mother had resided in the Commonwealth for over six months before the filing of her petition, thereby qualifying Massachusetts as the child's "home state." [5-7]

An out-of-State court's adjudication of contempt, made as the result of a mother's alleged violation of visitation rights of the father under a child custody determination in that State, did not constitute a "pending custody proceeding" such as would bar a Massachusetts Probate Court from exercising jurisdiction under G. L. c. 209B, § 2 (*a*) (1), to hear

the mother's petition to modify the prior child custody determination. [7-9]

General Laws c. 209B, § 2 (*e*), did not bar a Probate Court judge from exercising jurisdiction over a mother's petition to modify a prior child custody determination by a Mississippi court, where the Mississippi court lacked jurisdiction under G. L. c. 209B to hear the proceeding. [9-11]

In a proceeding to modify a prior child custody determination by an out-of-State court, a Probate Court judge properly exercised his discretion under G. L. c. 209B, § 7, in determining that his exercise of jurisdiction would not violate the purposes of G. L. c. 209B, reward the wrongful conduct of a party, or compel the parties to litigate in an inconvenient forum. [11-13]

Where the record of a Probate Court proceeding to modify an out-of-State court's prior child custody determination did not contain an explicit finding whether the out-of-State court had declined to exercise its jurisdiction in accordance with the requirements of the Federal Parental Kidnapping Prevention Act, 28 U.S.C. 1738A(f) (1980), the matter was remanded to the Probate Court for a determination of that issue. [13-15]

A Probate Court judge's exercise of jurisdiction over a proceeding to modify an out-of-State court's prior child custody determination revealed no violation of the full faith and credit clause of the United States Constituion. [15]


PETITION filed in the Norfolk Division of the Probate and Family Court Department on February 20, 1987.

The case was heard by *Sumner Z. Kaplan*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael H. Kelly* for the father.

*Steven I. Dean* for the mother.

LIACOS, C.J. The defendant father, George, appeals from a decision of the Probate and Family Court (Probate Court), granting physical custody of the parties' minor son to the plaintiff mother, Brenda. The defendant claims that the Probate Court lacked jurisdiction under the Massachusetts child custody jurisdiction act, G. L. c. 209B (1988 ed.), to consider custody issues. He argues also that the court should have deferred to a prior custody determination by a Mississippi

court. The defendant contends further that the assertion of jurisdiction by the Massachusetts court violated both the Federal Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A (1980), and the full faith and credit clause of art. IV, § 1, of the United States Constitution. We affirm in part and remand for further findings of fact.

We note the following facts. George and Brenda had been long-term residents of Mississippi. They were married in Marshall County, Mississippi, on August 11, 1977. The only child of the marriage, Brandon, was born on January 9, 1980, in Marshall County, Mississippi, where the parties resided until their separation on or about January 12, 1981.

On May 27, 1981, the Chancery Court of Marshall County (Mississippi court) issued a final decree of divorce. As part of the decree, Brenda was awarded "paramount full care, custody and control" of Brandon, with "reasonable" visitation rights granted to George. On December 2, 1982, George's visitation rights were revoked after a Mississippi judge found that Brandon had suffered an injury to his neck and had been allowed to drink "too much beer" while in the care of his father. One year later, on December 9, 1983, the Mississippi court reinstated George's visitation rights and accepted an agreement of the parties which increased the amount of child support George was to pay to Brenda.

In August, 1984, Brenda and Brandon moved to Lonoke County, Arkansas. While in Arkansas, Brenda met and married Daniel, and gave birth to her second son, Joseph. During this period, George's visits with Brandon occurred without incident, with George taking Brandon back to Mississippi on several occasions.

In June, 1986, Brenda told George that she, Brandon, Daniel, and Joseph would be moving to Walpole, Massachusetts, in August, 1986. George came to Arkansas to visit Brandon on August 8, 1986, one day before the family was to leave for Massachusetts, and took Brandon back to Mississippi, without permission. On August 14, 1986, George applied to the Mississippi court for temporary custody of Brandon until a hearing could be held on the propriety of

Brandon's removal to Massachusetts. The request for a hearing was withdrawn, when, on August 14, 1986, the parties filed an agreement with the Mississippi court granting George extended visitation rights.[1] Immediately thereafter, Brenda, Brandon, Daniel, and Joseph left for Massachusetts.

Brandon attended school and received ongoing counseling in Massachusetts, and developed friendships with schoolmates and neighborhood children at his new home. However, George's efforts to speak with Brandon in Massachusetts over the telephone were either prevented or made meaningless through the efforts of Brenda and Daniel. Brenda also refused to allow Brandon to visit George in Mississippi over Christmas vacation in 1986. In January, 1987, George filed a motion in the Mississippi court seeking to have Brenda adjudicated in contempt of the August 14, 1986, decree outlining his visitation rights. On February 12, 1987, Brenda was duly served with notice of the pending contempt hearing.

On February 20, 1987, Brenda filed a petition with the Massachusetts Probate Court for a determination of custody and a request for a temporary order of protection pursuant to G. L. c. 209B, the Massachusetts child custody jurisdiction act. On that same day, the Probate Court issued a temporary order restraining George from taking Brandon out of the Commonwealth or "interfering with his personal liberty in any way." George was allowed supervised visitation with Brandon in Massachusetts.[2]

George filed an answer to Brenda's petition to the Massachusetts Probate Court on April 24, 1987. In response to a motion by George, the judge bifurcated the trial, and proceeded to take evidence solely on the issue whether the Pro-

---

[1]The agreement allowed George to take Brandon back to Mississippi for a six-week summer vacation, a seven-day Christmas vacation, and a spring vacation, in addition to visits on three other unspecified occasions. George could visit Brandon in Massachusetts no more than once each month.

[2]On February 24, 1987, the Mississippi court found Brenda to be in contempt of court for her failure to allow Brandon to visit George in Mississippi. The court sentenced Brenda to thirty days in jail, fined her $500, and ordered that she pay George $500 for legal expenses.

bate Court had jurisdiction under G. L. c. 209B (1988 ed.), to hear the case. After a thorough hearing, the judge concluded that the Probate Court properly could hear the case. A trial on the issues of custody and visitation was set for February 8 and 9, 1988, and a guardian ad litem was appointed to represent Brandon's interests in the litigation.

One month after the Probate Court rendered its decision as to jurisdiction, George filed a motion to stay the proceedings pending an appeal of that decision. This motion was denied, and the case proceeded to hearing. The probate judge corresponded and spoke by telephone with the Mississippi judge regarding the custody petition. See G. L. c. 209B, § 7 (c).[3] On July 5, 1988, the probate judge granted shared legal custody of Brandon to both George and Brenda, with physical custody awarded to Brenda. The judge ordered visitation rights for George, and limited these rights to exercise within the Commonwealth. George filed a notice of appeal, and we transferred the appeal to this court.

1. *The Massachusetts child custody jurisdiction act.* In Massachusetts, jurisdiction over child custody proceedings possibly involving the jurisdictional claims of other States is determined according to G. L. c. 209B (1988 ed.). Chapter 209B provides guidelines to determine when a Massachusetts court may exercise jurisdiction over an initial child custody proceeding, or, as in the present case, when it may exercise jurisdiction over the modification of a prior child custody order. G. L. c. 209B, § 2 (a). Under the statute, a court must determine whether it has the power to exercise jurisdiction in a custody proceeding and, if so, whether it should exercise that power under the standards provided in the statute. *Umina* v. *Malbica*, 27 Mass. App. Ct. 351, 355 (1989). See *Custody of a Minor (No. 3)*, 392 Mass. 728, 732-733 (1984).

---

[3]Section 7 (c) of G. L. c. 209B allows courts of the Commonwealth to "communicate and exchange information with a court or courts of any other relevant jurisdiction" in order to determine the appropriate forum for a custody proceeding.

A court may not undertake a custody hearing until both of these determinations have been made.[4]

General Laws c. 209B, § 2 (*a*) (1), grants jurisdiction to "[a]ny court which is competent to decide child custody matters . . . if . . . the commonwealth . . . is the home state of the child on the commencement of the custody proceeding."[5] "Home state" is defined as "the state in which the child immediately preceding the date of commencement of the custody proceeding resided with . . . a parent . . . for at least six consecutive months."[6] G. L. c. 209B, § 1. In his decision concerning the jurisdiction of the Probate Court, the judge found that Brandon had been living with Brenda in the Commonwealth for more than six months before the date of the filing of Brenda's petition. This finding qualified Massachusetts as Brandon's "home state," thereby empowering the Probate Court to exercise jurisdiction over the custody petition. *Custody of a Minor (No. 3)*, *supra* at 732. See *Umina* v. *Malbica*, *supra* at 357; *Bak* v. *Bak*, 24 Mass. App. Ct. 608, 614 (1987).

The defendant cites § 2 (*b*) of G. L. c. 209B in support of his contention that the Probate Court lacked jurisdiction over the present case. The defendant refers to that part of § 2 (*b*) which states that "physical presence in the commonwealth of

---

[4]We note that, while G. L. c. 209B "appears to be based . . . upon the Uniform Child Custody Jurisdiction Act, 9 U.L.A. 111 (Master ed. 1979)," G. L. c. 209B differs from the uniform act "in material respects." *Tazziz* v. *Tazziz*, 26 Mass. App. Ct. 809, 814 (1988). See *Custody of a Minor (No. 3)*, 392 Mass. 728, 731 n.3 (1984) (uniform act provision "similar but not identical" to Massachusetts counterpart). *Umina* v. *Malbica*, *supra* at 354 (c. 209B "is far from a carbon copy of the [uniform act]").

[5]We have recognized that the Probate and Family Court is a "court which is competent to decide child custody matters," within the meaning of G. L. c. 209B, § 2 (*a*) (1). *Custody of a Minor (No. 3)*, *supra* at 732.

[6]"Jurisdictions with occasion to consider the question have regarded 'the date of the commencement of the proceeding' in modification cases as the time when the request for modification was filed." *Umina* v. *Malbica*, *supra* at 358. Therefore, for the purposes of this case, the custody proceeding was "commenced" when Brenda filed her petition with the Probate Court. See *Custody of a Minor (No. 3)*, *supra* at 732.

the child or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of the commonwealth to make a custody determination." He summarily concludes that § 2 (*b*) deprives the Probate Court of jurisdiction, regardless of the duration of Brandon's residence in the Commonwealth. This argument is without merit.

Section 2 (*a*) (1) of G. L. c. 209B grants jurisdiction based solely on residence in the Commonwealth for at least six months of the child and a parent or person acting as parent. Section 2 (*b*) must be read in light of § 2 (*a*) (1), and can reasonably be understood to deny jurisdiction only when the physical presence of the child in the Commonwealth is of insufficient duration to qualify the Commonwealth as the child's "home state" under § 2 (*a*) (1).[7] For the purposes of this case, the Commonwealth is Brandon's "home state." Therefore § 2 (*b*) does not defeat the jurisdiction of the Massachusetts court.

We turn now to the issue whether, under the standards set out by c. 209B, the Probate Court *should* have exercised jurisdiction in the circumstances of this case. George argues that both § 2 (*d*) and § 2 (*e*) of G. L. 209B required the Probate Court to refuse to exercise any jurisdiction it may have had over the issue of Brandon's custody. We disagree. We are of the opinion that, of these two provisions, § 2 (*d*) does not apply to the situation at hand, and § 2 (*e*) does not forbid the Probate Court from hearing this case. We address each section in turn.

General Laws c. 209B, § 2 (*d*), states that "[a] court of the commonwealth shall not exercise jurisdiction in any custody proceeding commenced during the pendency of a pro-

---

[7]Section 2 (*b*) would also apply to a situation where the child had resided in the Commonwealth for more than six months prior to the commencement of the action, but no parent or person acting as parent of the child had resided in the Commonwealth for a similar period. In such a case, the Commonwealth would not qualify as the child's "home state," under § 2 (*a*) (1), and the child's physical presence in the Commonwealth would not alone support the exercise of jurisdiction by a court of the Commonwealth.

ceeding in a court of another state."[8] This section was "designed generally to apply to situations in which no custody determination has yet been made on a matter pending before a foreign court." *Custody of Minor (No. 3), supra* at 733. Although the Mississippi court had already determined custody of Brandon, George contends that a custody determination is "pending" in Mississippi, within the meaning of § 2 (*d*), because the Mississippi court has a continuing interest in ensuring that the parties adhere to the Mississippi decree outlining George's visitation rights. The defendant points to the outstanding contempt judgment against Brenda as evidence of the Mississippi court's continuing exercise of jurisdiction over this case. Section 2 (*d*) mandates a refusal of jurisdiction only in the presence of a pending "custody proceeding." Because G. L. c. 209B defines "custody proceeding," we turn to the specific provisions of that definition to determine whether the outstanding Mississippi contempt judgment barred the exercise of jurisdiction by the Probate Court.

Chapter 209B defines a "custody proceeding" as a "[proceeding] in which a custody determination is one of several issues presented for resolution." G. L. c. 209B, § 1. A "custody determination" is defined as "any court order, instruction or judgment, whether temporary or final, providing for the custody of or visitation rights with a child; [and does not include] other child-related matters except to the extent such order [or] judgment contains a custody determination as [defined above]." *Id.*

In the present case, the contempt judgment issued due to an alleged violation of George's visitation rights. While the

---

[8]Section 2 (*d*) states in full: "A court of the commonwealth shall not exercise jurisdiction in any custody proceeding commenced during the pendency of a proceeding in a court of another state where such court of that state is exercising jurisdiction consistently with the provisions of this section for the purpose of making a custody determination, except in accordance with paragraph (3) of subsection (a), unless the court of the other state shall decline jurisdiction pursuant to paragraph (4) of subsection (a) or shall stay its proceedings or otherwise defer to the jurisdiction of a court of the commonwealth."

judgment certainly sought to protect George's exercise of those rights, it did not "provide for" custody or visitation rights in the sense of creating new rights or modifying existing ones. George's visitation rights already had been "provided for" in a previous court decree. Section 2 (*d*), with exceptions not relevant here, does not bar the exercise of jurisdiction unless the pending custody proceeding would "provide for" custody of or visitation rights with the child. Therefore, the outstanding contempt judgment does not constitute a "pending custody proceeding" for the purposes of § 2 (*d*), and the prohibition of jurisdiction provided for in that section does not apply to this case.

Section 2 (*e*) of G. L. c. 209B sets out the circumstances in which a court of the Commonwealth properly may exercise jurisdiction to modify an existing custody determination of another State. *Custody of a Minor (No. 3), supra* at 733. Under § 2 (*e*), "[i]f a court of another state has made a custody determination in substantial conformity with [G. L. c. 209B]," the Massachusetts court cannot modify that determination unless (1) the foreign court lacks jurisdiction under G. L. c. 209B or has declined to exercise its jurisdiction; and (2) the Massachusetts court has jurisdiction under the statute to hear the case. G. L. c. 209B, § 2 (*e*). *Custody of a Minor (No. 3), supra* at 733. We have already determined that Massachusetts enjoyed jurisdiction over this case under the statute as Brandon's "home state."

Section 2 (*a*) of c. 209B sets out the four bases on which jurisdiction over child custody proceedings may be had. In order for § 2 (*e*) to apply, Mississippi must have enjoyed jurisdiction on at least one of these four bases. We find no such grant of jurisdiction.

As described earlier in this opinion, § 2 (*a*) (1) prescribes guidelines for a determination of "home state" jurisdiction. At the time of the Massachusetts custody hearing, Mississippi did not enjoy "home state" jurisdiction because Brandon had been a resident of the Commonwealth for at least six months. Indeed, Brandon had not lived in Mississippi for over two and one-half years, having spent two years in Ar-

kansas with his mother. "[I]t is not unusual for a court which exercised original jurisdiction to lose 'home state' jurisdiction." *Umina* v. *Malbica, supra* at 358.

Section 2 (*a*) (2) of G. L. c. 209B creates jurisdiction in a State if no other State has "home state" jurisdiction and "it is in the best interest of the child" to assume jurisdiction because the child and at least one parent have a "significant connection" with the State and there is available in the State "substantial evidence concerning the child's present or future care, protection, training, and personal relationships." G. L. c. 209B, § 2 (*a*) (2). Mississippi could not have exercised jurisdiction under § 2 (*a*) (2) because Massachusetts had "home state" jurisdiction at the time of the Massachusetts hearing.

Section 2 (*a*) (3) of G. L. c. 209B bestows jurisdiction on a State if the child is physically present in that State and has been abandoned or there is an emergency due to abuse or neglect of the child.[9] Jurisdiction under § 2 (*a*) (3) was not available to Mississippi at the time of the Massachusetts hearing because Brandon was not "physically present" in Mississippi. Finally, the defendant can find no relief under § 2 (*a*) (4), which provides jurisdiction if "it appears that no other state would have jurisdiction [under § 2 (*a*) (1), (2), or (3)] or another state has declined to exercise jurisdiction."

---

[9]Section 2 (*a*) (3) states in full: "Any court which is competent to decide child custody matters has jurisdiction to make a custody determination by initial or modification judgment if: . . . the child is physically present in the commonwealth and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child from abuse or neglect or for other good cause shown, provided that in the event that jurisdictional prerequisites are not established pursuant to any other paragraph of this subsection and a court of another state shall be entitled to assert jurisdiction under any other subparagraph of this paragraph then a court exercising jurisdiction pursuant to this clause of paragraph (3) may do so only by entering such temporary order or orders as it deems necessary unless the court of the other state has declined to exercise jurisdiction, has stayed its proceedings or has otherwise deferred to the jurisdiction of a court of the commonwealth."

G. L. c. 209B, § 2 (*a*) (4).[10] As we have noted, at the time of the hearing, Massachusetts enjoyed "home state" jurisdiction over the case. By proceeding to the merits of the custody petition, the Probate Court clearly did not decline to exercise its power of jurisdiction. Therefore, § 2 (*a*) (4) does not apply to this case. Because the Mississippi court lacked jurisdiction under c. 209B to hear the case at the time of the custody hearing in Massachusetts, § 2 (*e*) did not bar the Probate Court from modifying the Mississippi custody decree.[11]

The defendant also argues that the Probate Court should have refused to hear the case under the prudential guidelines set out in G. L. c. 209B, § 7. Section 7 provides discretion to refuse to exercise jurisdiction if the assumption of jurisdiction would violate the purposes of the statute, reward the wrongful conduct of a party, or compel the parties to litigate

---

[10]Section 2 (*a*) (4) states in full: "Any court which is competent to decide child custody matters has jurisdiction to make a custody determination by initial or modification judgment if: . . . it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that the commonwealth is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that a court of the commonwealth assume jurisdiction."

[11]We note that Mississippi may enjoy jurisdiction over this case under the Federal Parental Kidnapping Prevention Act. Section 1738A(d) of the act grants continuing jurisdiction to "a state which has made a child custody determination consistently with the provisions of this section" so long as that State enjoys jurisdiction under its own law and "remains the residence of the child or any contestant." The grant of jurisdiction under the Federal act may differ from the grant of jurisdiction under G. L. c. 209B due to the difference in the language of the two statutes. For example, in the circumstances of this case, Mississippi lacks jurisdiction under c. 209B, § 2 (*a*), because Brandon's home State is Massachusetts and Brandon does not reside or is not physically present in Mississippi. However, the Federal act looks to whether a State remains the residence of the child *or* any contestant. *McDougald* v. *Jenson*, 786 F.2d 1465, 1482 (11th Cir.), cert. denied, 479 U.S. 860 (1986). George remains a resident of Mississippi. Therefore, if Mississippi enjoyed jurisdiction under its own law, § 1738A(d) would grant Mississippi continuing jurisdiction over this case.

We withhold our discussion of the applicability of the Federal act until Part 2 of this opinion.

in an inconvenient forum. See *Tazziz* v. *Tazziz*, 26 Mass.
App. Ct. 809, 814 (1988). See also *Bak* v. *Bak*, *supra* at
615. Subsection (*d*) provides five factors which a court may
consider in determining whether to decline jurisdiction: "(1)
whether another state is or recently was the child's home
state; (2) whether another state has a closer connection with
the child and his family or with the child and one or more of
the contestants; (3) whether more substantial evidence con-
cerning the child's present or future care, protection, train-
ing, and personal relationships is available or whether such
evidence is more readily available in another state; (4)
whether the parties have agreed on another forum which is
not less appropriate; and (5) whether the exercise of jurisdic-
tion by a court of the commonwealth would contravene any
of the purposes of [the statute]." G. L. c. 209B, § 7 (*d*).
Applying these factors to the record in this case, we conclude
that the probate judge did not abuse his discretion by declin-
ing to defer to the Mississippi court as the more appropriate
forum.

Massachussetts is Brandon's home State, while at the time
of Brenda's petition to the Probate Court, seven year old
Brandon had not lived in Mississippi for over two and one-
half years. Massachusetts was the home of Brandon's
mother, Brenda, with whom Brandon had lived his entire life,
as well as the home of his younger half-brother, Joseph, and
his stepfather, Daniel. Brandon was attending school and re-
ceiving counseling in the Commonwealth at the time of the
petition, and had developed friendships in his new home. On
the other hand, George points out that Mississippi was the
home State of Brandon's father, grandparents, and other
close relatives. George also states that "Mississippi was the
only state in which parties and their son had lived as a fam-
ily." However, because § 7 (*d*) (3) looks to "evidence con-
cerning the child's *present* or *future* care" (emphasis added),
the consideration of the parties' marital locus, two and one-
half years distant, would carry little weight in a case involv-
ing a child barely seven years old at the time of the com-
mencement of the custody proceedings in question. While the

place of residence of Brandon's father and grandparents certainly is a significant consideration, the probate judge had good reason to find that Massachusetts, as the home of Brandon's mother and the location of his schooling, counseling, and peer relationships, had a closer connection to Brandon than does Mississippi. See G. L. c. 209B, § 7 (*d*) (2). For the same reasons, the probate judge could conclude that substantial evidence concerning Brandon's "present and future care, protection, training, and personal relationships" was more readily available in Massachusetts. See G. L. c. 209B, § 7 (*d*) (3). Finally, we note that the Massachusetts court's decision to exercise jurisdiction was in keeping with the purposes of the statute, which include assuring that litigation concerning the custody of a child take place in the State with which the child and his family have the closest connection and where significant evidence concerning the child's care, protection, training, and personal relationships is most readily available. See § 2 of St. 1983, c. 680, the act inserting G. L. c. 209B. Based on these factors, the probate judge acted within his discretion in determining that Massachusetts, not Mississippi, was the more appropriate forum in which to consider the issue of Brandon's custody. See *Bak* v. *Bak*, *supra* at 615-616.

Because c. 209B granted the Probate Court jurisdiction to hear this case, and did not forbid the exercise of this jurisdiction or require deference to the Mississippi court, we conclude that the Probate Court was not in error when it acted on Brenda's petition for custody.

2. *Other challenges.* The defendant raises two other challenges to the Probate Court's exercise of jurisdiction. We discuss them briefly. The defendant claims that the Probate Court's actions violated the Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A (1980). In support of his argument, the defendant cites § 1738A(g) of 28 U.S.C., which prevents a court from exercising jurisdiction over a custody proceeding during the pendency of a proceeding in another State which is exercising jurisdiction consistently

with the provisions of 28 U.S.C. § 1738A(g). The defendant, however, fails to mention § 1738A(f) of the act, which states:

> "A court of a State may modify a determination of the custody of the same child made by a court of another state, if -
>
> "(1) it has jurisdiction to make such a child custody determination; and
>
> "(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination."

Section 1738A(c)(2) of the Federal act grants "home state" jurisdiction under the same six-month requirement found in G. L. c. 209B.[12] Because we have already determined that Massachusetts has jurisdiction over Brandon's case under c. 209B, Massachusetts has jurisdiction for the purposes of the Federal act as well.[13] Thus, the first requirement for modification under the Federal act is satisfied.

Prior to reaching a custody determination, the probate judge spoke to and corresponded with the Mississippi judge regarding the custody of Brandon. In his statement of findings, the probate judge notes that the Mississippi judge agreed not to act on the outstanding contempt judgment should Brenda bring Brandon to Mississippi to visit with his father. See note 2, *supra*. While these facts arguably suggest that the Mississippi judge acquiesced in the exercise of juris-

---

[12]The Federal act defines "home state" as "the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons. Periods of temporary absence of any of such persons are counted as part of the six-month or other period." 28 U.S.C. § 1738A(b)(4).

[13]As we have mentioned earlier, note 11 *supra*, Mississippi also may enjoy jurisdiction over this case under § 1738A(d) of the Federal act. However, for the reasons stated *infra*, we must remand this case to determine whether Mississippi waived jurisdiction. Therefore, we need not definitively address the issue of Mississippi's jurisdiction under § 1738A(d) at this time.

diction by the Massachusetts court, the record below is insufficient to indicate affirmatively whether the Mississippi judge chose to decline to exercise jurisdiction over this case. Section 1738A(f)(2) looks, in part, to whether "the court of the other State . . . has declined to exercise . . . jurisdiction to modify [the custody] determination." In the absence of an express finding by the Probate Court as to whether or not Mississippi chose to waive jurisdiction, we are unable to determine whether the requirements for modification jurisdiction under § 1738A(f) have been met. Therefore, we must remand this case to the Probate Court so that such a finding can be made.[14]

The defendant also claims that the Probate Court's failure to defer to the Mississippi custody determination violated the full faith and credit clause of art. IV, § 1, of the United States Constitution. Because custody arrangements are subject to modification, some controversy has arisen as to whether custody orders are sufficiently "final" to trigger full faith and credit requirements. *Thompson* v. *Thompson*, 484 U.S. 174, 180 (1988), and cases cited. The United States Supreme Court, while declining to settle this controversy, has recognized that "Congress' chief aim in enacting [28 U.S.C. § 1738A] was to extend the requirements of the Full Faith and Credit Clause to custody determinations." *Id.* at 183. "State courts faithfully administer the Full Faith and Credit Clause every day; now that Congress has extended full faith and credit requirements to child custody orders [through 28 U.S.C. § 1738A], we can think of no reason why the courts' administration of federal law in custody disputes will be any less vigilant." *Id.* at 187. If, on remand, it is determined that

---

[14]The probate judge may conduct an evidentiary hearing if such a hearing is needed to determine whether the Mississippi judge chose to decline jurisdiction. Because the probate judge who heard this case and spoke with the Mississippi judge has retired, he may be called as a witness if necessary, or, subject to the request of the probate judge to whom this case is assigned and the request of the Administrative Justice of the Probate and Family Court, may be recalled for the limited purpose of presiding over the fact-finding proceedings.

Mississippi waived jurisdiction over this case, the Probate Court's exercise of jurisdiction would be in keeping with the Federal act. If this proves to be the case, in light of the United States Supreme Court's statements in *Thompson*, we would be unwilling in these circumstances to find a full faith and credit violation.

We discern no error in the Probate Court's exercise of jurisdiction under G. L. c. 209B. However, in order to determine whether the requirements of 28 U.S.C. 1738A(f) have been met, we remand this case to the Probate Court for proceedings consistent with this opinion.

*So ordered.*