OPINION OF THE COURT
Charles J. Siragusa, J.
This matter comes before the court on a series of orders to show cause.
In addressing these applications, the following question must be answered: does this court, under the facts of this case, have subject matter jurisdiction over the dispute, that is, the custody of the Rivazfar children, which would allow it to entertain a request to modify the provisions of the June 7, 1989 custody decree rendered by the State of Florida? To answer this question, the court must determine the impact, on the facts of this case, of the law relating to interstate modification of custody decrees.
The facts underlying this consideration are not much in dispute. The petitioners are the children of the respondents. The respondents were married in 1980, and had three children, Sara Rivazfar, Sayeh Rivazfar, and Arash Rivazfar. Sara is now deceased. Sayeh Rivazfar will be 17 years old on October 17, 1996, and Arash Rivazfar turned 13 years old on July 24, 1996.
The respondents were divorced in 1986 in the Circuit Court, Escambia County, State of Florida. Pursuant to the divorce decree, Patricia Ann Pafford was granted custody of the petitioners. She and the children continued to reside in the State of Florida while Mr. Rivazfar relocated to Monroe County, New York.
In September of 1988, while the petitioners were in the custody of the respondent, Ms. Pafford, a male acquaintance, Raymond Wike (who the children describe as a former boyfriend) removed Sayeh and Sara Rivazfar from their mother’s house. He killed Sara in the presence of Sayeh by stabbing her and slashing her throat. He raped Sayeh and repeatedly stabbed her and slashed her throat, as well, in an attempt to kill her. She escaped being killed by playing dead. At the time, Sayeh was eight years old.
A subsequent application to modify the custody arrangements of the 1986 divorce resulted in an order and judgment of *509 the Honorable Jack R. Heflin, Circuit Judge of Escambia County, Pensacola, Florida, dated June 7, 1989. In that judgment, the court found that there had been substantial and material changes of circumstances since the entry of the June 3, 1986 order, which rendered the terms of that order detrimental to the best interests of the minor children.
This order changed custody to Mr. Rivazfar, who lived in Monroe County, and established a visitation schedule which in essence granted Ms. Pafford four weeks of visitation in the summer and one week during the Christmas holidays at her residence in Florida. After the entry of the order, the petitioners moved to Monroe County, and have continuously resided here with the respondent father and his second wife, Tammy Rivazfar. Sayeh Rivazfar has lived in Monroe County since she was nine years old, while Arash Rivazfar has lived here since he was six. Evidence concerning their education, friendships, activities, and counseling is all to be found here in Monroe County.
During the period from 1989 through 1993, the petitioners maintained their visitation schedule as established by the 1989 Florida decree. At some time, however, subsequent to summer visitation in 1993, the petitioners raised allegations of physical abuse at the hands of their mother. Ultimately, these allegations have come to include claims that Ms. Pafford disciplined the children by burning them with lighted cigarettes, striking them with wooden spoons or other pieces of wood, and in one instance, by undressing Arash and beating him repeatedly about the neck, buttocks, and legs with a heavy leather belt. Ms. Pafford, of course, denies these allegations. However, the affidavit of Dr. Peter Cormack, a clinical psychologist who specializes in children’s adjustment in divorce cases, indicates that he observed injuries to Sayeh’s hands consistent with her claim of having been burned with cigarettes by her mother.
The children have not visited Ms. Pafford in Florida since the summer of 1993. Arash has not returned to Florida at all. Sayeh returned only for the purpose of testifying at various penalty phases of the trial of Mr. Wike.
In December of 1995, Ms. Pafford commenced a contempt action in the Circuit Court for the First District of Florida, to enforce the June 7, 1989 order. That matter was apparently concluded after testimony was taken by the Circuit Court, on April 9 and 11, 1996. On that date, that court rendered an oral decision, which resulted in a May 28, 1996 order.
A proceeding was commenced in this court on June 21, 1996, upon an order to show cause issued by the Honorable Donald *510 J. Wisner, for modification of the 1989 Florida decree. As it turns out, this was the first petition in either Florida or New York which sought modification of the custody order entered by the Circuit Court, Escambia County, Florida, in 1989. At the time this action was commenced, at approximately 5:00 p.m. on Friday, June 21, 1996, there was no other custody proceeding, as that term is defined in the Uniform Child Custody Jurisdiction Act (UCCJA),[1] pending.[2] The order signed by Justice Wisner, and subsequently extended by this court, temporarily restrained the removal of Sayeh and Arash from Monroe County, pending a return date. On June 25, 1996, shortly after assignment of this matter, and pursuant to the provisions of the UCCJA, this court, aware that some type of action might be pending in the State of Florida, attempted to contact the Florida Circuit Court by telephone. The purpose of this communication was to determine if in fact a custody proceeding was pending in the State of Florida, and if so, to insure that "the issue [ ] may be litigated in the more appropriate forum” (NY Domestic Relations Law § 75-g [3]; Fla Stat Annot § 61.1314 [3]). The Florida Circuit Court Judge was unavailable, but subsequently returned this court’s call on Friday, June 28, 1996. At the request of the Florida Circuit Court Judge, this court placed its inquiry in writing by letter dated July 1, 1996. The Florida Circuit Court Judge responded to this inquiry by correspondence dated July 23, 1996 and by "errata” letter dated August 1, 1996.
Turning now to the issue of interstate modification of custody decrees, the court must look to the provisions of the UCCJA and the provisions of the Parental Kidnaping Prevention Act of 1980 (28 USC § 1738A; PKPA). The UCCJA has been enacted into law by every State in the Union, as well as the District of Columbia.[3] The PKPA is, of course, a Federal statute which like the UCCJA pertains to child custody determinations. Under the Supremacy Clause of the US Constitution, the PKPA supersedes any inconsistent provisions of State law, *511 including those of the UCCJA (Thompson v Thompson, 484 US 174 [1988]).[4] Jurisdiction over interstate enforcement and modification of child custody decrees is controlled by the PKPA, which requires that "every State shall enforce according to its terms, and shall not modify except as provided in the [PKPA], any child custody determination made consistently with the [PKPA] by a court of another State” (28 USC § 1738A [a]). The Act applies to related issues of visitation as well (28 USC § 1738A [b] [3]).
An analysis of the above sections of the PKPA leads to certain undisputed conclusions. Florida properly had jurisdiction under its own law, that is, the UCCJA (Fla Stats Annot § 61.1308), to render the 1986 original custody determination and the 1989 modification. The basis for jurisdiction under the UCCJA was that Florida was the "home State” of the children. Since the definitions of "home State” under the UCCJA and under the PKPA are essentially the same, Florida satisfies the requirement of 28 USC § 1738A (d), that the 1986 and 1989 custody determinations made by the State of Florida were con *512 sistent with the provisions of the PKPA.[5] Likewise, there can be no question that New York, since the children have lived here since 1989, is currently their "home State”, and therefore, under 28 USC § 1738A (f) (1) of the PKPA, has' the jurisdiction to make a child custody determination. Since in this case the Florida Circuit Court has not declined jurisdiction, this court can modify the 1989 decree, as requested by the petitioners, only if the Florida Circuit Court no longer has modification jurisdiction under its own State law.
Florida has two statutes which deal with modification jurisdiction. The first is a nonuniform provision of Florida law, Florida Statutes Annotated § 61.13, and the second is a UCCJA provision, Florida Statutes Annotated § 61.1308.
In pertinent part section 61.13 reads: "(2) (a) The court shall have jurisdiction to determine custody, notwithstanding that the child is not physically present in this state at the time of filing any proceeding under this chapter, if it appears to the court that the child was removed from this state for the primary purpose of removing the child from the jurisdiction of the court in an attempt to avoid a determination or modification of custody.” Clearly Florida does not continue to have jurisdiction under section 61.13 (2) (a) since the Circuit Court itself authorized, in its 1989 decree, the removal of the children to the State of New York.[6]
This court finds that Florida has not met the jurisdiction requirements of the UCCJA. Interpreting these requirements, Professor Merril Sobie, who has written the Practice Commentaries to the New York UCCJA, which is virtually identical to its Florida counterpart, has delineated the analysis which should be applied (Sobie, 1993 Supp Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 75-o, 1996 Pocket Part, at 91). Even if a contestant remains in the original State, such as the case at bar, that State should apply the following two-prong test: (a) whether a jurisdictional basis exists under the UCCJA; (b) whether the court should decline jurisdiction on principles of inconvenient forum set forth in the UCCJA (Fla Stat Annot § 61.1316; Domestic Relations Law § 75-h).
*513 There is no evidence that the Florida court performed such an analysis. Neither the papers before this court nor the communications from the Florida Circuit Court reflect consideration of the requisite factors. The absence of such analysis is fatal to the Florida court’s exercise of jurisdiction. No jurisdictional basis exists under section 61.1308 of the Florida Statutes Annotated. The children’s long-term residence in New York and their failure to return to Florida for any purpose relevant to this determination since 1993 clearly mandates that "home State” jurisdiction is controlling. Moreover, Florida would clearly be an inconvenient forum under the factors set forth in the UCCJA as enacted in Florida Statutes Annotated § 61.1316 (NY Domestic Relations Law § 75-h). Rather, a consideration of those factors leads to the conclusion that New York is the more convenient forum. Specifically, New York has been the children’s home State since 1989, and evidence concerning their present and future care, counseling, protection, training, activities and personal relationships are obviously more readily available in this State.
The New York State Appellate Division, Fourth Department, has held that a trial court cannot, consistent with the UCCJA and PKPA, merely assume or summarily determine that it constitutes a convenient forum, but rather, it must consider the statutory factors enumerated in the UCCJA. The failure to do so is reversible error (Schumacher v Opperman, 187 AD2d 1033 [4th Dept 1992]). Moreover, the Fourth Department has held that when a court of another State "was not continuing to exercise jurisdiction substantially in compliance with the UCCJA”, the courts of this State may properly assume jurisdiction "for a proper consideration * * * of the statutory factors set forth in Domestic Relations Law § 75-h (3)” (Evans v Evans, 208 AD2d 223, 228, 230 [4th Dept 1995]; Fla Stat Annot § 61.1316). As indicated above, this court has considered those factors and finds New York to be the more convenient forum.
The respondent, Patricia Pafford, however, has urged that the Florida Supreme Court has interpreted Florida law differently and abrogated the sections of UCCJA referred to above by its decision in Yurgel v Yurgel (572 So 2d 1327 [1990], supra). To the extent that Yurgel rules on whether or not the UCCJA could ever divest a Florida court of modification jurisdiction, it clearly limited its holding to the facts of that case. The court stated "we do not agree that the UCCJA could ever operate to 'vest’ jurisdiction of the cause in a foreign state under the facts at hand. The trial court has continuing jurisdiction over its *514 own decree because minimum contacts clearly have been maintained in Florida” (at 1332 [emphasis supplied]).
The facts in Yurgel (supra), of course, demonstrate an extraordinary connection between the children and the State of Florida. Those facts may be briefly stated. Within six months of the children’s leaving the State in the custody of their father, who resided in New York, their mother, during a period of visitation when the children were actually present in Florida, commenced an action to modify the original custody provisions. Moreover, that action was commenced at a time when the original custody decree was being appealed. Litigation then occurred at both the trial level and the appellate level over the next three years, and during this time, the children spent at least a quarter of each year with their mother in Florida. Obviously, the facts relating to the Rivazfar children, as set forth above, are in sharp contrast to the facts in Yurgel.
To the extent that Yurgel (supra) has general application in interpreting the laws of Florida, it fails to answer the jurisdictional question presented to this court. Yurgel directed Florida courts in modification cases to ignore the literal language of its own law as embodied in the UCCJA section adopted as Florida Statutes Annotated § 61.1308, and rather look solely at Florida Statutes Annotated § 61.133 for modification jurisdiction. That section which is part of the UCCJA reads in pertinent part:
"Modification of custody decree of another state
"(1) If a court of another state has made a custody decree, a court of this state shall not modify that decree unless:
"(a) It appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this act”.
A plain reading of this section evinces that it has no application to the facts of this case. Florida is not being asked to modify a custody determination made by another State. In any event, this section of the UCCJA merely refers this court back to the "jurisdictional prerequisites” of the UCCJA as set forth in Florida Statutes Annotated § 61.1308, and under the facts of this case, leads to the two-prong test outlined by Professor Sobie, which the Florida Circuit Court failed to perform. Therefore, this court finds that under the PKPA, and the facts of this case, Florida Statutes Annotated do not give the Florida Circuit Court custody jurisdiction of this matter, and conse *515 quently, since New York is the "home State”, this court may exercise jurisdiction.
Furthermore, a blanket extension of Yurgel (supra) beyond its facts, as the respondent Pafford urges, is ill-advised. If we accept her contention that only the Florida court may determine whether it has jurisdiction to modify the 1989 decree, regardless of how long her ex-husband and children have lived in New York, it would be tantamount to depriving the courts of New York of the authority granted to them by the New York State Legislature. Specifically, section 75-o (1) of the New York Domestic Relations Law, like its Florida counterpart, states "[i]f a court of another state has made a custody decree, a court of this state shall not modify that decree unless (1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this article or has declined to assume jurisdiction to modify the decree”. The PKPA in no way limits the court in a State in which a modification application is brought from determining whether the rendering State still has jurisdiction. In fact, "[o]rdinarily, the modifying court determines whether the rendering court has continuing jurisdiction under the law of the rendering state” (Matthews v Riley, 162 Vt 401, 408, 649 A2d 231, 237 [1994]).
While the purposes of the UCCJA and PKPA may be to aid States in avoiding jurisdictional conflicts, "[the] avoidance of conflict is not always easy, or even desirable” (Sobie, 1994 Supp Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 75-d, 1997 Pocket Part, at 87). Such is the case here. The overriding concern of this court should and must be the best interests of Sayeh and Arash Rivazfar. Monroe County, New York, is their home and has been their home since 1989. It is clearly in their best interests to have any dispute concerning their well-being resolved here.
Therefore, the relief sought by the children, Sayeh and Arash Rivazfar, is granted to the extent that this court will order a hearing, to be held at the first available opportunity to determine whether the 1989 order of the Florida Circuit Court should be modified. The court will appoint a Law Guardian to interview the children, both respondents, and any other persons possessing information regarding what is best for Sayeh and Arash Rivazfar. Pursuant to 22 NYCRR 202.18, the court will also appoint a qualified psychiatrist or psychologist to examine the children and the respondents.
*516 Correspondingly, the relief sought by respondent, Patricia Ann Pafford, is denied.
[Portions of opinion omitted for purposes of publication.]

. Fla Stat Annot § 61.1306 (3); NY Domestic Relations Law § 75-c (3).

. Contempt proceedings are not custody proceedings under the UCCJA (Custody of Brandon, 407 Mass 1, 551 NE2d 506 [1990]; Fuge v Uiterwyk, 542 So 2d 726 [1989]).

. Some insight into the purpose to be served by the UCCJA’s enactment in New York is revealed by the words of then Governor Hugh Carey, in his message of approval to the adoption of the statute on August 1, 1977, when he observed "[t]he intent is for other states to cooperate but not compete with the 'home State’ court on custodial matters.” (Governor’s Mem approving L 1977, ch 493, 1977 McKinney’s Session Laws of NY, at 2514.)

. Although this statute was designed to reduce litigation, it has not successfully accomplished that goal. This is probably unsurprising in light of the history of its adoption. As Judge Kaplan found in Matter of Leslie L. F. v Constance F. (110 Misc 2d 86, 88-89, n 1),
"the PKPA is a legislative enactment of momentous import whose precipitate passage during the waning moments of the 96th Congress militate against the likelihood that an opportunity for reflective consideration preceded its adoption. As pointed out in Law and the Family, Child-Custody Decrees — Jurisdiction (Foster & Freed, NYLJ, April 24, 1981, p 1, col 1), the PKPA was passed through the ploy of attaching a revised version of the Wallop Amendment as an unprinted rider to a bill dealing with Medicare reimbursement.
"The original drafts of the Wallop Amendment tracked the jurisdictional language of the UCCJA but due to the persistence and persuasiveness of the late Professor Brigette Bodenheimer, the amended version contained language that strengthened the mandate for exclusive and continuing home State modification jurisdiction. Since the measure was hastily prepared and hurriedly enacted it failed to mandate such jurisdiction under every eventuality. Nor is it likely that if Congressional review were to occur would its infelicitous deviation from the UCCJA be permitted to remain extant.”
Further, Professor Henry Foster, one of the authors of the prestigious Law and the Family in New York, has questioned the constitutionality of the PKPA, at least as applied to situations in which the custodial parent and child have long since relocated. He observed that "[s]uch cases suggest that in some situations a literal application of the continuing exclusive jurisdiction provisions of the PKPA might be so arbitrary and capricious as to offend the Constitution” (Foster, Child Custody Jurisdiction: UCCJA and PKPA, 27 NYL Sch L Rev 297, 310 [1981]).

. Fla Stat Annot § 61.1306 (5).

. The Florida Legislature in 1993 amended section 61.13 (2) by the addition of subdivision (c), relating to jurisdiction to modify custody determinations. Significantly, although this occurred after Yurgel v Yurgel (572 So 2d 1327 [1990], infra), the Legislature did not expand the jurisdiction of Florida courts over nonresident children.